IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL S. ALEXANDER;<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security;<br><br>    Defendant. | 4:14CV3194<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the denial, initially and on reconsideration, of Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1385. For the reasons below, the ALJ's decision will be reversed and remanded.

## PROCEDURAL HISTORY

  Plaintiff Michael S. Alexander ("Plaintiff") protectively filed his application for SSI benefits on September 30, 2011, alleging that he became disabled on July 1, 2005, due to right knee and back impairments, depression, migraines, and diabetes. (Tr. at 93, 168-71, 223.) He subsequently amended his alleged disability onset date to his protective filing date. (Tr. at 32.) Plaintiff's application was denied initially and on reconsideration. (Tr. at 93, 95, 97-100, 109-12.) Plaintiff appealed the denial to the Administrative Law Judge ("ALJ"), who held an administrative hearing on March 20, 2013. (Tr. at 29-54.)

  On April 26, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 13-23.) The ALJ found that Plaintiff had the following severe impairments: disorders of the back, obesity, diabetes, mild-to-moderate neuropathy,

depression, and anxiety. (Tr. at 15.) The ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1. (Tr. at 16.)

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and walk for 2 hours in an 8-hour workday; (3) sit for 6 hours in an 8-hour workday; (4) occasionally climb stairs, but never climb ladders, ropes, or scaffolds; and (5) frequently balance and occasionally stoop, crouch, kneel, or crawl. (Tr. at 17.) In addition, Plaintiff needed to avoid unprotected heights and hazardous moving machinery. (Tr. at 17.) The ALJ determined that Plaintiff could perform tasks of simple to intermediate complexity, but he was limited to jobs not demanding attention to details or complicated job tasks or instructions. (Tr. at 17.) He could work in proximity of others, but he was limited to jobs not requiring close cooperation and interaction with coworkers and would work best in relative isolation. (Tr. at 17.) Thus, he also was limited to jobs requiring only occasional interaction and cooperation with the general public. (Tr. at 17). The ALJ further determined that Plaintiff retained the ability to maintain attention and concentration for a minimum of two hours at a time and could adapt to changes in the workplace on a basic level and accept supervision on a basic level. (Tr. at 17.)

The ALJ concluded that Plaintiff could not perform any past relevant work, but could perform other jobs existing in significant numbers in the national economy. (Tr. at 21-23.) Accordingly, the ALJ found that Plaintiff was not disabled from September 30, 2011, through the date of the decision. (Tr. at 23).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 25, 2014 (Tr. at 1-5), making the ALJ's April 26, 2013, decision the Commissioner's final decision subject to judicial review under the Act.

## FACTUAL BACKROUND

On August 31, 2011, Plaintiff sought treatment from Timothy Zimmerman, M.D.,[1] ("Dr. Zimmerman") for low back pain that had developed gradually over the previous seven years following a work injury. (Tr. at 330.) Plaintiff rated his back pain as "6/10" in severity and said it had an aching, pressure-like, burning, and throbbing quality that radiated into his legs. (Tr. at 330.) He reported that his back pain was aggravated by bending, sleeping, and walking long distances, and his pain was alleviated by lying supine. (Tr. at 330.) Dr. Zimmerman noted that a lumbar spine magnetic resonance imaging scan ("MRI") revealed degenerative disc disease and that Plaintiff's back pain had been treated previously with physical therapy, epidural steroid injections, medication, and bed rest. (Tr. at 330.) He noted that physical therapy had been ineffective, but the epidural steroid injections had been effective in alleviating Plaintiff's pain. (Tr. at 330.) Dr. Zimmerman diagnosed Plaintiff with lumbar disc degeneration and low back pain. (Tr. at 330.) He prescribed Percocet for Plaintiff's back pain (Tr. at 330-31) and completed forms indicating that, because of degenerative disc disease and chronic low back pain, Plaintiff could not lift more than 10 pounds; could not sit, walk, or stand for more than 15 minutes at a time, and needed to shift positions or lie down every 10 to 15 minutes. (Tr. at 331, 332-33.) In a September 23, 2011, letter, Dr.

---

[1] Plaintiff represents that Dr. Zimmerman has been his treating doctor since 2009. (Pl. Br., Filing No. 16 at ECF 13.)

3

Zimmerman repeated these limitations and further noted that Plaintiff was "really unable to do much of anything"; had to constantly shift positions; was most comfortable lying down; and could not do much twisting, bending, or stooping. (Tr. at 338.)

Consultative physician Ryan Clauson, M.D. ("Dr. Clauson"), examined Plaintiff on November 21, 2011. (Tr. at 347-55.) Dr. Clauson noted that Plaintiff was able to sit comfortably through the 10-minute history portion of the examination, had normal gait and ambulation, and rose from sitting to standing and got on and off of the examination table without any assistance. (Tr. at 350.) He noted that Plaintiff had pain with lumbosacral spine range of motion; had normal range of motion in his cervical spine, but reduced range of motion in his lumbar spine; was palpably tender in his lower back; had negative straight leg raising; and had no muscle spasms or erythema. (Tr. at 350-51.) He further noted that Plaintiff could not squat, had normal gait, and could walk on his heels and toes although that was painful for him. (Tr. at 351.) Neurological examination findings were normal. (Tr. at 351.) Dr. Clauson concluded that Plaintiff's back pain limited his activities, he could not sit and stand for more than 10 to 15 minutes or do much lying down, and he would not be able to perform a job where he had to sit for long periods of time. (Tr. at 352.) He further concluded that Plaintiff's other impairments would not further limit his ability to work. (Tr. at 352.)

On December 6, 2011, state agency physician Jerry Reed, M.D. ("Dr. Reed"), reviewed Plaintiff's records (Tr. at 393-403) and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk at least 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; push and pull without further limitation; frequently balance; and occasionally climb, stoop, kneel, crouch, and crawl.

4

(Tr. at 394-395.) Dr. Reed noted the limitations assessed by Dr. Zimmerman and Dr. Clauson, but he concluded that they were reflective of Plaintiff's allegations and unsupported by their examination findings. (Tr. at 402-403.) State agency physician Glen Knosp, M.D. ("Dr. Knosp"), reviewed Plaintiff's records a month later, on January 23, 2012, and noted that Plaintiff's description of his symptoms and pain were not consistent with the evidence, concluded Plaintiff was capable of working, and affirmed Dr. Reed's assessment of Plaintiff's functional capabilities. (Tr. at 427-28.)

On March 20, 2013, Plaintiff appeared at an administrative hearing before the ALJ. (Tr. at 29-54.) The March 2013 hearing was Plaintiff's third hearing in a series of hearings for prior applications. (Tr. at 32.) The first two applications were unsuccessful. (Tr. at 32.) Plaintiff claimed that his depressive symptoms had "become worse" after his second disability report (Tr. at 267), and he asserted that he did not go anywhere and lay in bed most of the day every day. (Tr. at 256.)

At the March 2013 hearing, Plaintiff testified that he was unable to work because of his back, which he originally hurt in 2002. (Tr. at 36, 45.) He said that sitting and standing irritated his back pain, and he said his back pain prevented him from being able to bend, twist, turn, or lift. (Tr. at 36.) He said that his neuropathy caused severe tingling in his legs that felt like being electrocuted. (Tr. at 36.) Plaintiff testified that he had trouble going up and down stairs because of his back and knees, could not lift anything heavier than a two-liter bottle of soda, and could not crouch or squat. (Tr. at 39-40.) He said that he could not perform a sit-down job because constantly had to move around to due to his back pain and he could not sit for more than 15 minutes before having to stand. (Tr. at 40-42.) He said that he had to stop a couple of times to

5

stretch during the 105-mile drive to the hearing that day. (Tr. at 34-35.) Plaintiff estimated that he could walk only a couple of blocks. (Tr. at 42.)

Plaintiff further testified that he used to hunt, fish, play golf, bowl, and play in softball leagues, but he could no longer do these things because of his impairments and could now only sit and watch from his truck as his kids hunted, fished, and played baseball. (Tr. at 44, 47.) He stated that he hunted with his son at a location 20 minutes from his house. (Tr. at 45.) He described this hunting activity as sitting in his truck with his son while his son "[shot] his deer from the vehicle." (Tr. at 45.) He also testified that he watched his son's baseball games from his vehicle and that the games lasted fifty minutes to an hour. (Tr. at 47.)

Vocational Expert ("VE") Nancy Hughes ("VE Hughes") also appeared and testified at the March 2013 hearing. (Tr. at 48-53.) VE Hughes confirmed that Plaintiff's past relevant work included skilled light work as a retail shift manager and medium skilled work as a welder. (Tr. 49-at 50, 278.) The ALJ asked VE Hughes to consider a hypothetical person of Plaintiff's age and education, who had Plaintiff's work experience and RFC. (Tr. at 17, 49-50.) VE Hughes testified that such a person could not perform any of Plaintiff's past relevant work, but could perform other work such as a sewing machine operator, table worker, and touch up screener. (Tr. at 50-51).

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues *de novo.* Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether

substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Frederickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).

The Court must also determine whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel,* 226 F.3d 969, 971 (8th Cir. 2000). The Court does not owe deference to the Commissioner's legal conclusions. *See Brueggemann v. Barnhart,* 348 F.3d 689, 692 (8th Cir. 2003).

## DISCUSSION

Under the Act, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has promulgated regulations outlining a five-step sequential evaluation to guide an ALJ in determining whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).

The general issues in an SSI case are whether the final decision of the Commissioner is consistent with the Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The specific issues in this case are (1) whether the ALJ properly weighed the opinion of Plaintiff's treating physician, Dr. Zimmerman; and (2) whether substantial evidence supports the ALJ's step-five finding that Plaintiff could perform a significant number of jobs in the national economy. These issues are addressed below.

I.  **Weight Afforded Plaintiff's Treating Physician's Opinion**

Plaintiff argues that the ALJ erred by failing to give sufficient weight to the opinions of Dr. Zimmerman, Plaintiff's treating doctor. Defendant counters that "[t]he ALJ carefully considered the entire record in assessing Plaintiff's RFC, including the opinion of Dr. Zimmerman . . . ." (Def. Br., Filing No. 19 at 9.)

When analyzing a disability claim, the ALJ must consider all relevant evidence, including medical records and medical opinions. *See* 20 C.F.R. §§ 404.1513, 404.1520, 404.1520b, 404.1527. "Generally, 'a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Perkins v. Astrue,* 648 F.3d 892, 897 (8th Cir.2011)) (internal marks omitted); *see also* 20 C.F.R. § 404.1527(c)(2).

8

"[A] treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Renstrom*, 680 F.3d at 1064 (quoting *Perkins,* 648 F.3d at 897) (internal quotation marks omitted). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Perkins,* 648 F.3d at 897–98 (internal quotation marks and citation omitted). The ALJ must "always give good reasons" to explain the weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(c)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). The ALJ must apply certain factors to determine what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *See* 20 C.F.R. 404.1527(c)(2).

Dr. Zimmerman opined that, because of chronic low back pain, Plaintiff could lift only 10 pounds; needed to shift positions or lie down every 10 to 15 minutes and thus could not sit, stand, or walk for more than 10 to 15 minutes at a time; could not do much twisting, bending, or stooping; and was "unable to really do much of anything." (Tr. 20, 332-33, 338). The ALJ considered Dr. Zimmerman's opinion and gave it "minimal weight" because Dr. Zimmerman's opinions regarding Plaintiff's limitations were not supported by the record as a whole. (Tr. at 20.) Substantial evidence on the record supports the ALJ's decision to afford minimal weight to Dr. Zimmerman's opinion.

In support of this determination, the ALJ noted that physical examinations of the claimant revealed a normal range of motion of the lumbar spine, normal range of motion of all extremities, normal strength in all extremities, a normal gait, normal heel/toe walking, negative straight leg raising tests, and normal sensory and motor functions. This evidence supports the ALJ's conclusion that Dr. Zimmerman's assessed limitations were too restrictive. As Dr. Reed noted, the limitations assessed by Dr. Zimmerman were reflective of Plaintiff's allegations, but they were unsupported by medical examination findings. Dr. Knosp reviewed Plaintiff's records and affirmed Dr. Reed's assessment of Plaintiff's functional capabilities.

The ALJ also noted that Plaintiff's reported activities conflicted with Dr. Zimmerman's opinion that Plaintiff was unable to do much of anything. Plaintiff testified that he drove himself to the March 2013 hearing and that he only "stopped a couple of times" to stretch during the 105-mile drive. (Tr. at 34-35.) He also testified that he hunted with his son at a location 20 minutes from his house. He described his hunting activity as sitting in his truck with his son while his son "[shot] his deer from the vehicle." (Tr. at 45.) He also testified that he watched his son's baseball games from his vehicle and that the games lasted from fifty minutes to an hour.

The Court finds the evidence stated above is substantial evidence on the record supporting the ALJ's determination with respect to the weight afforded to Dr. Zimmerman's opinions. Accordingly, the ALJ's decision will not be reversed for failure to afford proper weight to Dr. Zimmerman's opinions.

## II. The ALJ's Step-Five Determination

Plaintiff argues that the ALJ erred at step five because he relied on the testimony of Dan Zumalt ("VE Zumalt"), the VE who testified at Plaintiff's prior hearing. Plaintiff also argues that the ALJ erred because he did not accept the testimony of VE Hughes, who testified at Plaintiff's March 2013 hearing. For the reasons below, the Court finds that the ALJ improperly relied on the testimony of VE Zumalt.

At step five, if the claimant cannot perform his past relevant work, the ALJ must consider the assessment of the claimant's RFC, age, education, and work experience, to see if the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant "can make an adjustment to other work," the ALJ will find that the claimant is not disabled. *Id.*

Although the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, the burden of production shifts to the Commissioner at step five. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his RFC] and vocational factors." 20 C.F.R. § 404.1560(c)(2). The Commissioner may satisfy its burden through the testimony of a VE if such testimony is reliable. *See* 20 C.F.R. § 416.966(e); *see Overman v. Astrue,* 546 F.3d 456, 464 (7th Cir.2008). "The decision of the Commissioner shall be upheld if supported by substantial evidence, 42 U.S.C. § 405(g), and substantial evidence is defined by the regulations as 'such *relevant* evidence as a reasonable person might accept as adequate to support a conclusion.'" *Davis v. Astrue*, 647 F. Supp. 2d 598, 602 (E.D.N.C. 2009) (quoting 20 C.F.R. § 405.5).

Here, VE Hughes appeared and testified at the March 2013 hearing.[2] However, the ALJ found VE Hughes' testimony unreliable because it was inconsistent with the Dictionary of Occupational Titles and prevailing opinions, including the opinion of VE Zumalt, who testified at Plaintiff's prior, April 2011, hearing addressing a previous application for benefits. Instead of relying on the testimony of VE Hughes, the ALJ based his findings at step five on the prior testimony of VE Zumalt.

The ALJ erred in relying on the testimony of VE Zumalt because VE Zumalt's April 2011 testimony did not reflect the number of jobs in existence at the time of Plaintiff's March 2013 hearing. *See Davis*, 647 F. Supp. 2d at 602 (E.D.N.C. 2009) ("[VE] testimony is only relevant to an ALJ's inquiry if it reflects the number of jobs in existence at the time of the hearing; an ALJ's decision is helped no more by learning how many jobs were in existence prior to the hearing than it is by information about jobs which, given his limitations and impairments, the claimant could not perform.") Consequently, the ALJ's step-five determination is not supported by substantial evidence. Because the ALJ's ruling was premised entirely on irrelevant VE testimony,

---

[2] VE Hughes testified that a hypothetical person of Plaintiff's age and education, who had Plaintiff's work experience and RFC could not perform any of Plaintiff's past relevant work, but such a person would be able to perform other jobs, including jobs of sewing machine operator (existing in 10,000 jobs nationally and 50 jobs in Nebraska), table worker (existing in 2,000 jobs nationally and 20 jobs in Nebraska), and touch-up screener (existing in 1,500 jobs nationally and 12 jobs in Nebraska). (Tr. at 50-51). VE Hughes also testified that she recently researched companies that provide unskilled sedentary jobs and found that many of such jobs no longer existed in the United States and that jobs in the button and notion industry and optical goods industry had been moved to other countries. (Tr. at 51-53.)

this case must be remanded for further proceedings for consideration of VE testimony that is both reliable and relevant.[3]

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is not supported by substantial evidence in the record as a whole and should reversed and remanded in accordance with this Memorandum and Order. The Appeals Council should remand the case to the ALJ with instructions to obtain supplemental evidence from a VE whose testimony is reliable and relevant to evaluate the effect of the assessed limitations on Plaintiff's ability to perform work in the national economy for the relevant period.

The Court acknowledges that the accompanying final judgment begins the appeal period that determines the 30-day period during which a timely application for attorney fees may be submitted under the Equal Access to Justice Act.

IT IS ORDERED:

1. The decision of the Appeals Council is reversed;

2. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order; and

3. Judgment will be entered in a separate document.

---

[3] Generally, this Court "defer[s] to the ALJ's determination regarding the credibility of testimony". *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Thus, because the ALJ did not find VE Hughes testimony credible, the Court will not grant Plaintiff's request to award benefits based on her testimony.

Dated this 7th day of May, 2015.

                                      BY THE COURT:

                                      s/Laurie Smith Camp
                                      Chief United States District Judge